In that case, Mr. Keshevarzy, you may proceed. Thank you very much. Good morning and may it please the Court. Mo Keshevarzy for Kaiser Foundation Health Plan. Your Honors, I'd like to reserve five minutes of my time for rebuttal. Keep an eye on the clock. Will do. Thank you, Your Honors. Your Honors, the question posed by this case is this. When the law, for good reasons, forces a health hospital into transactions with one another, what are the respective rights and obligations of the parties? And to illustrate the nature of these forced transactions, I would like to begin, if I may, to illustrate using an example or hypothetical. The Queen's Medical Center on the island of Oahu sits adjacent to the Punchbowl Crater, and it's right next to Interstate H1, which runs east-west on the island. Imagine a Mr. John Doe driving on the interstate. Mr. Doe is a Kaiser member. He prepaid for his services, and he's entitled under Hawaii law to have his services, including emergency services, provided or arranged by Kaiser on a prepaid basis. Mr. Doe has an accident, and he must go to a hospital. The law provides that health plans cannot restrict where their members go in the case of an emergency. For good reason, the law does that, and consistent with that law and good policy, Kaiser tells its members, if you have an emergency, go to the nearest emergency room. Don't worry if it's a Kaiser facility or not. So consistent with that law and good policy, Mr. Doe goes to the nearest emergency room, which is the Queen's Medical Center. And just like Kaiser cannot restrict where its members go for emergency services, the flip side of that coin is that Queen's cannot decline to see patients that arrive in its emergency rooms based on network status or contract status. Queen's must provide services, at least up to the moment of stabilization, for any patient that presents in its emergency rooms. So Queen's treats Mr. Doe. Counsel, may I just ask, is there any evidence in the record that Queen's refuses to give services to Kaiser patients? No, Your Honor. Has it ever declined a Kaiser patient? For emergency services, Your Honor, no, because it cannot. By law, it must see those patients. Queen's is... But it must see those patients in their capacity as individual patients. It doesn't matter whether they're insured by Kaiser or Blue Cross or by any other insurance company, does it? That's correct, Your Honor. This is federal law called EMTALA that requires hospitals to treat all patients that arrive in their emergency rooms, at least up to the moment of stabilization. And this is something that hospitals are... For every hospital that has a contract with CMS to see Medicare patients, and Queen's is one such hospital, they have a legal obligation to treat patients that come to their emergency rooms up to the point of stabilization, Your Honor. Can you explain... So I think you're about to get to this. It's your position, as I understand it, that in the situation you're describing, somebody has an emergency, a Kaiser patient, and goes to the Queen's Medical Center, that the Queen's would have a right to recover from you, from Kaiser, for the treatment that they provided. And where does that come from? Because I understand Kaiser's duty to the patient. And we've just been talking about Queen's' duty to the patient and the patient's corresponding duty to it. But where is... Where does your duty to reimburse Queen's come from? Your Honor, there are a couple of sources for that. Number one, our duty to reimburse Queen's comes from the fact that the law in the HMO context in Hawaii requires HMOs to provide or arrange for emergency services on a prepaid basis. And this is different from the insurance law in Hawaii, which allows insurance companies to reimburse members. The HMO Act doesn't allow for, doesn't talk about or authorize reimbursement of a member. There's no indemnity. We're in the HMO world. And in the HMO world, the HMO must provide or arrange for the services on a prepaid basis. So as we've noted in our briefs, Your Honor, our argument, one argument, is that when the law says you, Kaiser, as an HMO must provide or arrange for the services on a prepaid basis, that means Mr. Doe, as in my example, has no further obligation because he has prepaid his dues. And the law says his only obligation once he prepays for his dues is to, is co-pay and co-insurance. So number one, Your Honor, we submit to you that the structure of Hawaii law compels that result. Number two, the restatements, Your Honor, restatement section 22, which we cited, and we cited the Lumford decision from the Hawaii Supreme Court that talks about that Hawaii courts with some frequency rely on the restatements. Hawaii, similar to some states, there's a paucity of law interpreting Hawaii statutes. And so Hawaii courts look to laws of other states and with some frequency to the restatements. And restatement section 22 says that when a party discharges another party's obligations, it is entitled to payment. So when Queens performs emergency services to it is discharging an obligation that Kaiser has to those members and under the restatements, it is entitled to payment. And Your Honor, I would also note that in 2013, the last time Kaiser and Queens were non-contracted, Queens sued Kaiser invoking section 22 of the restatements and said, you Kaiser have an obligation to pay us because we have discharged services to your members. So Your Honor, my answer to your question is that it's a two-part answer. It's one is the structure of Hawaii law and one is the restatements. Does that answer Your Honor's question? Yes. Okay. So I want to go back to my example, not to finish the hypothetical necessarily because we have moved on, but I think it's an important point here, Your Honors, and that is by law, Kaiser and Queens are forced into transactions with one another. It is an We're going to have members ending up in their emergency rooms and whether they like it or not, they're going to see our members in the emergency rooms. We have no choice, no ability to control their charges. We have no ability. We, meaning Kaiser, have no ability to control what services are provided to our members. So day after day, week after week, Kaiser members will continue to end up in Queens emergency rooms and Queens will issue bills to Kaiser for those services. And the question, one question before Your Honors, is in those circumstances where there is no express agreement on rate and the law has compelled the parties into this forced marriage, what is the measure of reimbursement? Is it as Queens contends, 100% of its bill charges, regardless of how tethered or untethered those charges might be to reasonable value? Or is it as we contend, fair market value, that when the law has forced parties to be in a transaction, that fair value, reasonable value principles kick in and the obligation is reasonable value and Queens is entitled to reasonable fair market value for its services. And moreover, if we pay amounts that we believe not only meet but exceed reasonable value, can Queens go after Kaiser members, Mr. Doe in my example, put them in collections, force them into bankruptcy and sue them? These are not hypothetical examples. We allege and produce evidence at the trial court that these happen. Queens goes after patients. Or is Queens required to deal with Kaiser and direct any collection activity at Kaiser? And herein, I would submit to Your Honors, lies the odd thing about this case. In a typical case, the party who wants to be paid wants to go after the party that can pay it, the party that can afford to pay it, that has a financial wherewithal to reimburse it. Here, the odd thing about Queens' position is that Queens has Kaiser saying, I am standing here willing and able to pay you if you demonstrate to a court that what we have paid you is not reasonable value. And Queens says, no, no, no, Kaiser, I don't want to deal with you, even though you're the one that can pay me. I'd rather go after Mr. Doe. And why would Queens want to do that? Your Honor, it is not simply because it can. The California Supreme Court addressed this issue in the prospect case where the court talked about the interim effects that these collection activities have. So why is it that Queens wants to go after Kaiser members? Because Queens knows that if Kaiser members start receiving bills, balanced bills, and some have, and what they're going to do is they're going to turn to Kaiser and put pressure on Kaiser to pay more. Or worse, they will disenroll from being Kaiser members. And Kaiser and Queens, while Kaiser is a health plan in this case, Kaiser is also a hospital system and it's a competitor of Queens. May I ask you about, since you brought up the prospect case from California, one of the things that the California Supreme Court relied on in reaching the conclusion that it did, that there's a prohibition on balanced billing, is this provision of the California insurance code that requires HMOs to reimburse providers, if there was an express statutory requirement there, that as far as I can tell, Hawaii doesn't have. So given that difference in the statutes, why should we suppose that a Hawaii court would reach the same conclusion as a California court did? Your Honor, a couple of answers to your question. One is, it is true that to reimburse the provider. We submit to you that the one reason California needs to have that statute is that in California, HMOs are defined as entities that provide for services, arrange for services, or reimburse for services. So the concept of reimbursement to the member is something that's built into the definition of an HMO in California. Hawaii's statutory scheme is not the same. It's not identical. It says an HMO is an entity that provides or arranges for on a prepaid basis. So the definitions are not overlapping in terms of what an HMO is in California versus Hawaii. So the California legislature needed to enact a law that said expressly plans need to pay because this reimbursement concept was built into the law, and the prepayment concept is not built into the California law. Hawaii doesn't need to do that, because Hawaii has defined HMOs as entities that can provide or arrange. And two, in Hawaii, an HMO member is entitled to have their services prepaid. If Queens is right, that they can go after the members, and the member has to pay for the services after they have been rendered, then Queens is reading out of the HMO Act in Hawaii, the word prepaid, because what Queens is post-payment, not prepayment. The concept of prepayment in Hawaii law is clear. Once the member prepays, that's it. They're done, except for co-pays and coinsurance. So that... As I understand the dispute is with respect to the remainder. Obviously, Kaiser is willing to pay up to a point such as reasonable value, right? There's no question that Kaiser does not dispute that it would pay up to that point. The only question is the remainder. Is that correct? That's correct, your honor. But even then, Hawaii law says members, enrollees, Mr. Doe in my example, are entitled to receive their services, including emergency services on a prepaid basis. There is no provision in Hawaii law that allows for the patient to post-pay after they have paid their dues. That is why Queens must look to Kaiser, because Hawaii law says when the patient prepays, they're done. Now, in contrast, Hawaii insurance law doesn't say that. Hawaii insurance law says that patients can be reimbursed. And that distinction, your honors, I submit to you, matters. That is a distinction that Hawaii made in its legislation. Insurance, you can reimburse. HMO, it's prepaid, they're done. Judge Miller, before I finish, and I know I've gone over, I wanted to reserve five minutes. But before I finish, I wanted to go back to your question. And if I may point you, your honor, when you ask, why is it that you have the obligation to pay? This is text from the California Supreme Court, where the court said, the health plan's duty to reimburse arises out of the provider's duty to render services without regard to the patient's status or ability to pay. Because Queens has an obligation to provide a service to our members, we have an obligation to pay them. And the Hawaii HMO Act confirms that point. And I'd like to reserve the remaining minute, 15 seconds, please, your honors. Thank you. And we'll hear from Ms. Rose. Good morning, your honors. The question before the court is quite simple. The district court error in dismissing Kaiser's complaint against Queens and finding that there was no contractual relationship, either expressed, implied, in fact, or implied in law between the parties to preclude Queens as an out-of-network provider from billing its patients directly. The district court did not find the existence of a contract because we are in Hawaii and Kaiser's and California case law. That is not the law in Hawaii. It is undisputed that there's no written contract between the parties. And it's also undisputed at this point that there's no implied in fact contract between the parties. The sole issue today is does Kaiser have an implied in fact contract with Queens and out-of-network provider based on Hawaii statutory provisions that are separate and distinct from California and do not provide a direct reimbursement from HMO like Kaiser to an emergency service provider like Queens. Can I just ask you, what about the principle, your friend on the other side invokes principles of restitution and says that if a Kaiser patient, if you treat a Kaiser patient, you would be able to seek restitution from Kaiser. Do you disagree with that? I disagree with that, your honor, and for a couple of reasons. We have Hawaii case law that has set forth, in particular, the insurance arena where a physician does not have a direct cause of action against an insurer. And although it's in the workers' comp setting, similar to this case, they cannot directly sue the insurer for bad faith. And in the restitution situation, your honor, it requires an underlying obligation, a direct link of reimbursement or some type of basis upon which one must pay the other. Our obligation is to our patients. And Kaiser's obligation is to their members. They're two different obligations. They're separate and treated separately. He says you have in the past brought actions against trying to recover. Your honor, let me address that for a minute. Yes, there was a lawsuit between Kaiser and Queens. I want to say approximately six to seven years ago, I was counsel for Queens at the time. That case is entirely different than this case. In that case, we did fall out of contract with Kaiser. We had it, and the case was based on implied in fact. We told Kaiser that we were going to bill them 100% for a few months. They actually paid 100% of our fees and then subsequently used a third party method to, in fact, claim that they could pay less than that. Our claim here is there was no, we argued mutual assent implied in fact. And if you read Judge K's decision in that case, that was the basis for his decision. That is not the case here. There is no mutual assent. There's been no partial payment in any way at 100%. And therefore, those cases are entirely different. Is it your view then like today, if a Kaiser patient experiencing an emergency, it comes to your hospital, you treat him, and suppose he's insolvent. Your position is you can't go after Kaiser. You can only go after a patient, he's insolvent, so you're just not going to get paid in that situation? That's correct. We do, if Kaiser has paid us some money, then that's obviously helpful. But if it's not 100%, you are correct. We are out of luck. And we as a type of hospital we are, we treat many people, any and everyone that comes to our door, and many of them cannot afford the care, whether they are insolvent or homeless or, you know, the list can go on. So there are many cases in which we do not receive 100% of our payments. When you find out that a given patient is, in fact, insured under Kaiser, would it not be simple for you simply to bill Kaiser? Yes, it would, Your Honor, and we have done that. But they have not paid, and in some cases, not even 50% of our bills. Did they pay anything? Because it seems to me that both counsel are really disputing the price. Apparently, Kaiser agrees that if they have an insured, they have to pay something. I don't understand, from what I hear from your opposing counsel, that they are denying any liability. All they're saying is that they don't want to pay 100% of what the hospital's bill is. Your Honor, the dispute is not solely on the amount. It's also on the fact that Kaiser's ultimate goal in this litigation is to prohibit us from balance billing. They don't want to allow us to go after our patient for any amount they choose not to pay. And that prohibition against balance billing requires Queens to be a participating provider with Kaiser, and we are not. And the statute specifically does not require a non-participating provider not to balance bill. So the issue, Your Honor, is not just the amount. It's about our right to who we can collect money from. And there is no direct obligation between Queens and Kaiser that limits us to what Kaiser wants. Unless, in fact, there is a contract. And as you mentioned before, you fell out of contract. Correct. If there is a contract, we would not be here today, Your Honor. Could QMC take the position that whenever it accepts Kaiser patients in the emergency room, it would charge, say, 150% of the normal billing rate, ostensibly because, you know, Kaiser has more burdensome paperwork. Maybe Kaiser patients, in your experience, you know, has more health issues that require more work. Is there anything that would stop QMC from charging more than other patients from other HMOs or insurance plans? Your Honor, I believe that we, first of all, we've never done that. We have a separate charge list of charges, and those are printed and approved, and they go out and are used for patients across the board. There's no allegation in this case that we are charging Kaiser members specifically more than we have charged anyone else. And we have, you know, the evidence in the case has, there's no evidence in the case to that effect because that's never happened. Yes, the one thing that troubles me here is, you know, we're trying to apply contract principles about price for parties negotiating, but here we're not in your typical contract, you know, with the fundamentals underlying contract laws, underlying fundamental, you know, foundation of contract laws. A party can always walk away, contract someone else if they don't like the price. Here, the government's forcing you guys basically to interact, and that gives some perverse incentives, you know, to be fair on both sides, for QMC to Kaiser to say we're going to only, you know, pay you X amount. So, it seems like just applying traditional contract principles really doesn't make much sense here, and, you know, maybe we're in the restitution realm because, you know, it just creates odd incentives for each party to engage in this gamesmanship, which is, I guess, what's happening here. Your honor, you must, again, the issue before this court is not about our excessive billing because Kaiser has no big standing and no right at this point to challenge our bills. We have not balanced billed any member to the state. We have not sent a direct bill to any patient. There is, that is speculative, and that has not occurred. If, in fact, they want to pursue a claim of our patients based on excessive billing, they need to get an assignment from that plaintiff or patient and pursue that claim individually. It is not Kaiser's claim to, in this situation, to claim that our fees, when we are out of contract, is excessive. It just doesn't. It's not their right. It's the patient's right, and they don't, there is no claim in this case from a patient. There is not one bill, not one, any kind of factual allegation, whether the name of the plaintiff, any kind of factual allegation to support a claim that for an assignment to Kaiser for your response to opposing counsel's invocation of the Lumphord case. Why doesn't that apply here? The Lumphord case. That's the case on restitution. That's the case the counsel was mentioning. Did I get that right, counsel? You can nod. Okay. About restitution. I think he's saying that to say that you have a restitution claim. The case that I was referring to, that doesn't allow for it. We don't have any case in Hawaii that allows for a direct cause of action between an emergency room provider to an insurance company or an HMO. There is essentially no support for that allegation or that claim. Your opposing counsel is saying there is a duty by construction of the Hawaii statutes for you to perform, and you're doing that in his argument as in a role for Kaiser. That, that appears. No, your honor, we are not doing any services for Kaiser. We perform services for people who are in need of emergency services, and that could be a Kaiser person, and it could, and in many cases, it's not. So our duty is to provide emergency services to anyone who walks in our door. It is not limited to Kaiser, and it is not for Kaiser. Kaiser's obligation is to their members to read, to provide this emergency reimbursement or the like. That is not our obligation, and we are not limited to serving in any way, have any basis to have a relationship, contractual relationship with Kaiser at this point. Our relationship with the patient. They're not, they're not arguing contract as I understand it. They're arguing the statutory duty on the restitution. Okay, yes, your honor. They're an implied contract in law, and under the California law, the basis for all the cases that they are citing in California is section 1371.4, which by statute specifically requires an HMO to reimburse an emergency service provider. We have no statute to that effect in Hawaii, and for that reason, there is no direct link or causal connection between Queens and Kaiser. The obligations are separate and distinct. Thank you. I understand your point. Thank you. Thank you. I'm going to reserve my two minutes and 23 seconds for the attorney's fees argument. Thank you. Actually, we'll give you a couple minutes for that, but I have another question, so we'll make sure you get some time to address that. And the question is, you mentioned balance billing, and you say that you haven't balanced billed anyone, but your position is that you're entirely within your rights to bill the patients. Isn't that right? That's correct, your honor. Given this dispute, we have not balanced billed anyone. And why, can you address the prospect group? You heard the argument for why, given the similarity in the scheme, Hawaii courts would be likely to follow that. What's your response? Again, your honor, I don't want to be pounding on a broken record here, but prospect specifically relies on section 1371.4, which is the California statute that provides for a direct reimbursement between an HMO and an emergency services provider. And as a result of that direct link, and because of that statute, they find an implied contract in law. And as a result of that, they determine that there's no balance billing. There's no right to balance billing. That is not the case in Hawaii. And your honor, if you look at our statute that prohibits balance billing, and if you give me a minute, and it's 439D-8 subsection D, the last sentence of it says, no participating provider or agent trustee alike may maintain an action at law against a subscriber or an enrollee to collect sums owed by the health maintenance organization. It refers to a participating provider, and we are not a participating provider. So the statute specifically allows us to balance bill. And that's not the case. That is the law in Hawaii. And we don't have a direct right against the HMO. So our only right is against the patient. And just so I understand the reason that you're not a participating provider is because you don't have a contract. That's correct. Okay. All right. Any other questions? Okay. So we'll give you, we'll give you some time for rebuttal and Mr. Keshavarzi, let's put two minutes on the clock. Thank you. Thank you, Ron. Thank you. Your honor, I'm going to stay with the topic that Ms. Rose just raised. She said 432-9. It's actually 432-D-8. That's the HMO statute that prohibits balanced billing by participating providers. Let's talk about what the definition of participating provider is. It is a provider who under an express or implied contract, express or implied contract has agreed to provide services. We contend that there's an implied in putting aside prospect. If you disagreed with everything we say about prospect 432-D-8 and D-1, which is a definition of participating provider set prohibit balanced billing because Hawaii law says no balanced billing by hospitals that have an implied contract. In contrast, if you look into the definition of a participating provider under the insurance code in Hawaii, it doesn't say implied contract. It just says a provider who has a contract. That distinction matters, as we note in our papers, your honors. In Hawaii under the HMO Act, participating providers are those who have an implied contract and they can't balance bill. The insurance code doesn't say implied. So that distinction matters. Judge Lee, you asked a question about can they raise their charges however much they want. Your honor, we presented evidence at the trial court that for charge $42,000, far exceeding the reasonable value of those services, your honor. Under Queen's view, they can increase their charges twice next year, three times the year after that, and our patients are responsible for paying them, Kaiser members. And we contend that reasonable value principles control. If I can ask a follow-up question on that. One of the alternative theories is on restitution and quantum merit, however you want to characterize it. But you're also seeking declaratory judgment relief. And when you think of declaratory judgment, you think it's something perspective in the future, whereas restitution is usually backward looking. Is that possible to get declaratory judgment based on restitution? Yes, your honors, may I just finish? Judge Lee, the Beck relief request that we made was a declaration about the measure of recovery, not about any amounts. And this goes to the attorney fee motion. We have not asked for any money to be awarded to us. It is a declaration about the measure of recovery. And if the court said that the measure of recovery that Queen's is entitled to reasonable value, then there would be subsequent litigation between the parties to determine the reasonable value of those services. Okay, so we have only asked for a declaration regarding the measure of recovery. And your honor, all three of you asked questions about restitution. Where does this come from? I refer your honors to pages 26 and 27 of our opening brief. Section 22 of the restatements, your honors. I'm sorry, pages 27 and 28, section illustration 10 comments G of restatements section 22 gives an example of a situation to which the restitution restitution principles apply. You would reading that one would think that it was this case because it talks about a hospital and the health plan, not having a contract, having a contract falling out of the contract. Hospital keeps providing services. What is the measure of recovery? The restitution gives that example, that illustration. And it says under those circumstances, the measure is restitution, reasonable value, because that makes sense. If I could ask one follow up to judge Lee's question, I mean, the one feature of a declaratory judgment act action is that it's the flip side of the affirmative action that the other party would bring against you. And you've just heard Ms. Rose say that Queens doesn't think it can bring this action against you. It doesn't intend to do that. So, I mean, if we were to write something that says you're seeking a declaration about the amounts you'd have to pay in restitution, but the counterparty has disclaimed any intent or ability to seek restitution. Why is it appropriate to go on and bring? Well, your honor, because that declaration impacts the rights and obligations of the parties. So if you said, for example, they could balance bill, but the measure is reasonable value, that's of enormous value because to them, the measure is their bill charges, whatever they may be. And if the measure is reasonable value, then our patients would have that measure of recovery in any litigation with Queens if they were balanced billed. And as I said, there could be additional litigation between the parties. I mean, that is an important dispute between the parties. They say a hundred percent, we say reasonable value. And if the court were to say under these circumstances, when you have been compelled into these relationships, the measure is reasonable value, that would have an enormous effect in terms of the party's dealings with one another. And your honor, while they disclaim suing Kaiser now, they have sued Kaiser before, and they can sue Kaiser before. They might say it for purposes of this case, but that doesn't prevent them from bringing a case against Kaiser and saying they're entitled to more. We have always said, we think we have paid you reasonable value. We think we've paid you more, but if you want more, let's litigate that issue. And let's figure out what that amount is. We are not saying we don't want to pay more. And I guess the last thing I want to say, your honors, is that the district court didn't give us leave to amend. I mean, to the extent there are any defects with the complaint, we should have had at least one chance to amend. And this court has repeatedly held that litigants, plaintiffs should be given at least one chance before the complaint is dismissed with prejudice. So to the extent there are defects, at the very least, we should have had an opportunity to plead additional claims or a different set of facts that may have allowed us to survive the 1286 standard, your honors. And I'll just say one more thing. I would refer the court to the chalk case on the attorney fee issue, since I won't be able to speak again. That case says an action in the nature of a sumsit is a case where there's money damages requested. We have not asked for money damages. And Hawaii law on this point is clear. Your honors, I thank you for your time, and I'm happy to answer any questions you have. And I thank you for allowing me to go over. Looks like there are no further questions. So thank you. And Ms. Rose, you've got two minutes on the cross call. Thank you, your honor. I'm going to take a minute of that to dispute Mo's statement that you look to the definition of participating provider and because or references an implied contract that puts us as a participating provider. Your honor, he leaves out the second part of the definition, which specifically says that a health maintenance organization or its contractor has agreed to provide health care services to enrollees. That means we would have had to either expressly or impliedly agreed to provide health care services to the enrollees. And again, the next part of this with the expectation of receiving payment directly or indirectly from the health maintenance organization. At no time has Queens agreed to provide services to Kaiser's members with the expectation of receiving services from Kaiser of fees from Kaiser. And therefore, we are not a participating provider. And under the statute, we are not prohibited from balance billing. The next point I'd like to make your honor real quickly is that while there's a lot of contention by Kaiser that our our bill rates are unreasonable, that is not in fact, the evidence in this case. And we believe that our bill charges are in fact, the reason of the value of the service provided. And I'd also point out your honor, that you have to look at this case based on what's in the pleadings. And while we have to acknowledge that allegation by Kaiser, we do not acknowledge their reference to a pneumonia patient and the like, because that is not in the pleadings. Finally, your honor on the attorney's fees issue, it is undisputed we are the prevailing party and it's undisputed that as the prevailing party if the up to 25% under 607-14. It's our belief that the Clay's case was one based on contract and I just need to refer you to our brief where we quote miss Kaiser's counsel where they the court asks, would you agree then or does Kaiser agree that in order for this to be a prohibition under Hawaii law and balance billing, that some kind of contract meaning and expressed or implied in fact, or law contract must exist. Kaiser's response, that's exactly our position. This case is based upon a contract and therefore, we should be entitled to our attorney's fees. The argument that it's a declaratory relief or injunctive case is not by definition, how you name the case or you name your causes of action is not the determinative of whether or not it is sound in us in a sunset, you must look to the allegations in the complaint and specifically the allegations. Counsel if I may inquire, I don't believe that Kaiser is seeking damages in this case, is that correct? They are seeking, I disagree your honor, they are seeking a measure of damages that they believe is less than our bill charges. That reduction results in a economic loss to us and therefore is damages. But this is not a damages claim against the hospital, it's a declaratory judgment as to what they may or may not be, am I right? That's correct, your honor, in that they are not, the allegation is they want a declaration regarding that our fees are unreasonable and that the measure of damages is reasonable value. We disagree with if that results in a reduction in our payment to us, that is damages. So while you may call it, they're looking for a measure, the ultimate result is less fees paid to Queens and that's damages. Thank you and thank you for your time, I appreciate it. We thank both counsel for their very helpful arguments this morning and the case is submitted.
judges: O'SCANNLAIN, MILLER, LEE